**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SPECIAL COUNSEL<br>EX REL. TRINITY M. ALICEA,<br>　　　　　Petitioner, | DOCKET NUMBER<br>CB-1208-17-0008-U-1 |
| v. | DATE: December 23, 2016 |
| DEPARTMENT OF DEFENSE,<br>　　　　　Agency. | |

# THIS STAY ORDER IS NONPRECEDENTIAL[1]

Shayla Silver-Balbus, Esquire, Oakland, California, for the petitioner.

Bradley R. Hansen, Esquire, Fort Lee, Virginia, for the agency.

**BEFORE**

Mark A. Robbins, Member

**ORDER ON STAY REQUEST**

¶1　　Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay for 45 days the agency's probationary termination of Trinity Alicea while OSC completes its investigation and legal review of the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

matter and determines whether to seek corrective action. For the reasons discussed below, OSC's request is GRANTED.

## BACKGROUND

¶2      In its stay request, dated December 20, 2016, OSC describes the following events and allegations:

¶3      On October 19, 2015, the Department of Defense, Defense Commissary Agency (DeCA), hired Alicea as a GS-03 Sales Store Checker at Luke Air Force Commissary (Commissary), subject to a 1-year probationary period. Sometime between January and March 2016, a coworker, referred to in the stay request as "John Smith," revealed to Alicea that he had completed various mandatory computer-based on-the-job training (OJT) programs on her behalf and that management would require her to sign paperwork certifying that she had completed the trainings herself. Alicea was concerned that signing these certificates would constitute falsification of official Government records, and she discussed Smith's revelations with several Commissary coworkers. Alicea alleges that, during these discussions, four coworkers confirmed that Smith completed OJTs on their behalf and that a Commissary Supervisory Store Associate directed them to falsely certify that they had completed their OJTs. Alicea further states that two of these coworkers reported to her that the Supervisory Store Associate had threatened discipline, including termination, if they refused to sign the certificates.

¶4      Alicea believed that Smith's completion of her OJT and the false certifications were illegal. She also was concerned that she would not receive proper training during her probationary period if Smith continued to complete OJT on her behalf. For example, she was not allowed to complete OJT on Women, Infants, and Children (WIC) purchases, a type of transaction requiring special training. She alleges that, as a result, during her first rating period, from October 19, 2015, through June 30, 2016, she accrued two cash variances on a

WIC transaction. She further states that she was never subsequently trained on how to properly process WIC purchase, though the Supervisory Store Associate required her to sign paperwork certifying that she received remedial training for the variances.

¶5 Sometime around March 2016, Alicea first disclosed her concerns to the Supervisory Store Associate, who, Alicea alleges, was dismissive and began to show hostility toward her, monitoring her more closely during her shifts and requiring her to complete tasks—such as scrubbing the walls and floors—not within Alicea's normal work duties. Alicea alleges that, over the next 6 months, Smith continued to complete OJT for her and other employees, and on several occasions the Supervisory Store Associate directed Alicea to falsely certify that she had completed her training. During this time, Alicea noticed what she believed to be additional training improprieties. For example, she states that she was sometimes directed to complete her own OJT but was provided the answers in advance by management to minimize her time off the floor. Alicea complained about these incidents to the Supervisory Store Associate, both in private and in staff meetings. In total, Alicea believes she raised her training-related concerns to the Supervisory Store Associate roughly 15 times during her 1 year at DeCA.

¶6 On September 30, 2016, the Supervisory Store Associate issued a letter terminating Alicea's appointment effective October 1, 2016, before the end of her probationary period. The letter cited Alicea's failure of a critical element in her performance plan. Specifically, the Supervisory Store Associate found Alicea to have had four cash or noncash variances during her first rating period, which exceeded the maximum of three variances allowed per rating period. The probationary termination became effective on October 1, 2016.

## ANALYSIS

¶7 Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC may request that any member of the U.S. Merit Systems Protection Board order a stay of any personnel action for

45 days if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice. Such a request shall be granted unless the Board member determines that, under the facts and circumstances involved, such a stay would not be appropriate. 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was committed. *Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010). The Board has the authority to stay a probationary termination after its effective date if it determines that OSC has reasonable grounds to believe the action was taken as a result of a prohibited personnel practice. *Special Counsel ex rel. Rigdon v. Department of the Army*, 98 M.S.P.R. 110, ¶ 13 (2004).

¶8        In this case, OSC contends that it has reasonable grounds to believe that Alicea's probationary termination was the result of a prohibited personnel practice under 5 U.S.C. § 2302(b)(8). To establish a prima facie violation of 5 U.S.C. § 2302(b)(8), OSC must demonstrate that: (1) the employee made a protected disclosure; (2) the official(s) who recommended, took, or threatened the personnel action had actual or constructive knowledge of the protected disclosure; (3) a personnel action was taken or not taken, or threatened to be taken or not taken; and (4) the protected disclosure was a contributing factor in the challenged personnel action. *Office of Special Counsel ex rel. Hopkins v. Department of Transportation*, 90 M.S.P.R. 154, ¶ 4 (2001).

¶9        Regarding the first element, a disclosure is protected under 5 U.S.C. § 2302(b)(8) if the individual has a reasonable belief that the information being disclosed evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Tullis v. Department of the Navy*, 117 M.S.P.R. 236, ¶ 8 (2012). The standard for evaluating the reasonableness of the belief is

whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable to the employee could reasonably conclude that the actions of the Government evidence one of these types of wrongdoing. *Id.* (citing *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)). Here, OSC asserts that a disinterested observer in Alicea's position could have reasonably believed that the information she disclosed concerning Smith's completion of OJT and the falsification of training certificates evidenced a violation of law and/or an abuse of authority.

¶10    Turning to the second element, OSC explains that the Supervisory Store Associate had actual knowledge of the disclosures because Alicea made them directly to her on multiple occasions. OSC further states that, according to Alicea, several other employees can attest that they heard Alicea make the disclosures to the Supervisory Store Associate in passing or during staff meetings. As to the third element, OSC observes that a probationary termination is a covered personnel action under 5 U.S.C. § 2302(a)(2)(A), as stated in *Sirgo v. Department of Justice*, 66 M.S.P.R. 261, 267 (1995). Finally, OSC argues that the contributing factor element is satisfied under the knowledge/timing test set out at 5 U.S.C. § 1221(e)(1), because a personnel action taken within 1 or 2 years of a protected disclosures is considered to have occurred within such a period of time that a reasonable person could conclude that the disclosure was a factor in the personnel action. *See Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 22 (2010).

¶11    Given the assertions made by OSC in its stay request, I find there are reasonable grounds to believe that the agency terminated Alicea's employment during her probationary period because of her protected disclosures under 5 U.S.C. § 2302(b)(8).

**ORDER**

¶12      Based on the foregoing, I conclude that granting OSC's stay request would be appropriate. Accordingly, a 45-day stay of the agency's probationary termination action is GRANTED. The stay shall be in effect from December 23, 2016, through and including February 6, 2017. It is further ORDERED that:

(1) During the pendency of this stay, Alicea shall be reinstated to the GS-03 Sales Store Checker position she held prior to her probationary termination;[2]

(2) The agency shall not effect any changes in Alicea's duties or responsibilities that are inconsistent with her salary or grade level, or impose upon her any requirement which is not required of other employees of comparable position, salary, or grade level;

(3) Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order; and

(4) Any request for an extension of the stay pursuant to 5 U.S.C. § 1214(b)(1)(B) must be received by the Clerk of the Board and the agency, together with any further evidentiary support, on or before January 23, 2017. Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) must be

---

[2] As OSC observes, a stay of a probationary termination serves to maintain the employee's probationary period for the duration of the stay. *Special Counsel v. Department of Veterans Affairs*, 45 M.S.P.R. 486, 488 n.* (1990) (citing *Special Counsel v. Department of Commerce*, 23 M.S.P.R. 136, 137 (1984).

received by the Clerk of the Board, together with any evidentiary support, on or before January 30, 2017.


FOR THE BOARD:

_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.